In re E & S DAIRY, INC., Debtor.

In re Hobson RUCKS and Claudie B. Rucks, Debtors.

In re HOBSON RUCKS DAIRY, INC., Debtor.

Bankruptcy Nos. 84–01367, 84–01429 and 84–01478.

United States Bankruptcy Court, N.D. Alabama.

June 25, 1984.

## FINDINGS AND CONCLUSIONS BY THE COURT ON MOTIONS FOR A CHANGE OF VENUE

L. CHANDLER WATSON, Jr., Bankruptcy Judge.

*Introduction* —

Each of the cases styled as above was commenced by a voluntary petition filed, under 11 U.S.C., chapter 11, in this Court and continues to be pending here under said chapter 11. In the order listed above, the petitions were filed in succession, on March 13, 14, and 15, 1984. The Statements of Financial Affairs for the debtors were filed April 23 and 24, 1984.

On April 25, 1984, a motion was filed in each case by South Florida Production Credit Association (hereinafter referred to as "SFPCA"), a creditor, requesting a transfer of the case to the United States Bankruptcy Court for the Southern District of Florida. On the same day, a like motion was filed in the E & S Dairy, Inc. (hereinafter referred to as "E & S") case and in the Hobson Rucks Dairy, Inc. (hereinafter referred to as "Rucks Dairy") case by Syfrett Feed Company, Inc. (hereinafter referred to as "Syfrett"), a creditor in those two cases.

The five motions were consolidated for disposition by the Court, and a lengthy evidentiary hearing on the motions was held before the bankruptcy judge, on June 5, 1984, with the debtors and these credi-

tors and others represented thereat by legal counsel of record. The Court now must determine in each case whether to retain the case or transfer it to the bankruptcy court in South Florida.

There is a fourth, slightly related case, In re Stanley H. and Dea Y. Rucks, debtors, No. 84–00841, filed and pending in this Court, but no such request for a change of venue has been made in it.

*Findings of Fact —*

From the evidence presented to the Court, the bankruptcy judge finds the facts in each of the above-styled cases to be as follows:

1. Hobson and Claudie B. Rucks are individual debtors and are married to each other. Hobson Rucks is 67 years of age and lives with his wife in their residence located in the vicinity of Okeechobee, Florida. Mr. Rucks is actively engaged in business and was present and testified at the hearing. Mrs. Rucks suffers from serious, chronic respiratory and cardiac health problems and because of her poor health remained at their Florida residence, where the two of them have lived for approximately the last thirteen years.

2. Hobson and Claudie Rucks own approximately 260 acres of land, on which their dwelling house is located. The latter includes three bedrooms and two baths and is adjoined by a swimming pool. The land was acquired by them in about the year 1965, from one of their sons. This property has a fair market value of about $240,-000.00, and their personal property located there is valued by Mr. Rucks at about $40,000.00.

3. Hobson Rucks originally is from an area near Fort Payne, in extreme Northeast Alabama, but he last voted in an Alabama election in the year 1942. He and his wife are registered voters at or near Okeechobee, where they have been registered voters since about the year 1942. In the schedules filed in the case which they instituted in this Bankruptcy Court, Hobson Rucks and wife claimed a homestead exemption, under the laws of the State of Florida, with regard to the real property on which they reside, near Okeechobee, Florida. Mr. Rucks has a State of Florida driver's license, issued about four years ago. On their 1983 federal income tax return, Mr. and Mrs. Rucks showed that their place of residence was at or near Okeechobee. Neither of them filed a 1983 income tax return under the provisions of the laws of the State of Alabama.

4. Hobson Rucks has operated Rucks Dairy since the year 1958. Its present location is on 640 acres of land, which adjoin the Rucks' place of residence. The dwelling house is approximately one and one-half miles from the Rucks Dairy plant. In the opinion of Hobson Rucks, the land encompassed by the residence property and by Rucks Dairy has a value of approximately $1,000.00 per acre to which would be added the value of the buildings and other improvements, with the combined properties worth approximately $1,100,-000.00.

5. Hobson and Claudie Rucks own a piece of real estate in Northeast Alabama, within this district, which they purchased in the year 1969, and where they resided for two to three years before moving back to Florida. This property consists of two acres of land, which cost $1,000.00 and on which is located a large mobile home. The mobile home cost about $17,000.00 and was placed on the two acres of land two to three years ago.

6. E & S and Rucks Dairy are separate corporations, organized under the laws of the State of Florida. Because the 1982 franchise tax returns were not filed and the tax was not paid, the Secretary of State of Florida dissolved the two corporations, but these taxes have been paid since the chapter 11 petitions were filed in the Bankruptcy Court. The two corporations operate a dairy on approximately 640 acres of land owned by Rucks Dairy and located near Okeechobee. The dairy land and the Rucks residence land adjoin. Due to the prior separate operations of the dairy companies, each has a separate Independent Dairy Farmers' Association allotment. In order to maintain these allotments, a separate set of financial books is kept for each

company, thereby dividing the dairy operation on a 30%–70% basis between the corporations; however, the dairy business is operated as a unit. One of Hobson Rucks' sons, Edwin, is president of E & S and is responsible for its business operations. Hobson Rucks is president of Rucks Dairy, and he and Edwin Rucks are responsible for its business operations. In the operation of the one dairy business by the two corporations, some of the business and operational decisions are made by Hobson Rucks and some by Edwin Rucks.

7. The dairy business has a dairy herd of approximately 1,000 cattle which have a value of $1,000.00 to $1,200.00 each. The dairy equipment is owned by E & S and has a value of approximately $300,000.00. The cattle and equipment are located on the dairy farm owned by Rucks Dairy, near Okeechobee.

8. Each year about one-fourth of the cattle in the herd have to be replaced because of their failure to breed or a decrease in their production of milk. These are butchered. In order to maintain the herd of adult cattle, the practice in this dairy enterprise is to raise a sufficient number of heifers to replace the adult cows culled from the dairy herd. The heifers are purchased for the dairy business and raised to a weight of 300 to 400 pounds on the dairy farm near Okeechobee. The heifers are then transported to North Alabama and sold to Hobson Rucks, who places them on a farm in North Alabama, which is within this district and which belongs to a third party. Under this arrangement Hobson Rucks is due to pay the third party compensation for use of the land and for other services in caring for the heifers until just before they are ready to give birth to calves. Hobson Rucks then sells the animals back to the dairies, and the cattle are transported back to the dairy farm near Okeechobee. At the present time there are approximately 600 head of cattle being held in North Alabama by Hobson Rucks, under this arrangement.

9. The real estate which comprises the dairy farm near Okeechobee is subject to a mortgage from Hobson Rucks and wife and Rucks Dairy to the Federal Land Bank of Columbia (South Carolina), securing an indebtedness of approximately $850,000.00. The mortgage also covers the real estate which comprises the Rucks' residence, adjoining the dairy farm. SFPCA (formerly Farmers Production Credit Association) claims a security interest in the dairy herd which belongs to E & S and Rucks Dairy. There is an unresolved legal question as to whether this security interest lapsed into a state of unperfection due to the date on which an initial financing statement may have lapsed and the date on which a continuation statement was filed for record, in the office of the Clerk of the Circuit Court of Okeechobee County, Florida. The debt owed to SFPCA is approximately $360,-000.00. Both loans were originated and closed at Okeechobee, and both loans are "serviced" by the same lender's agent at Okeechobee. Hobson Rucks and wife are endorsers or guarantors of both of these debts. A debt of approximately $275,-000.00, arising from the operation of the dairy business, is owed to Syfrett at Okeechobee. It appears that this indebtedness may be secured by a second mortgage or a second security interest in some of the land and dairy equipment mentioned, which is located near Okeechobee. The financial accounting work for both firms is performed by an accounting firm located at West Palm Beach, about 70 miles from the dairy farm.

10. Hobson Rucks states that he now lives in Northeast Alabama three-fourths of the time. He has been sued on a debt of $10,000.00, in a state court within the Northern District of Alabama, by a bank located in this district, but he and his wife also have been named as defendants in a civil action brought in the Circuit Court for Okeechobee County, Florida, in their alleged capacity "as surviving members of the Last Board of Directors of E. and S. DAIRY, INC., a dissolved Florida Corporation." Hobson Rucks drives or travels in a 1978 model Lincoln automobile or a pickup truck, both of which bear Florida license plates. His financial books and records are kept in Alabama.

11. For the hearing at Anniston, Alabama, on June 5, 1984, two of the representatives of the largest two creditors traveled by commercial airplane from West Palm Beach, Florida, to Birmingham, Alabama, the latter being approximately 65 miles from Anniston. The round-trip air fare for the two was $428.00. The one-way trip from Okeechobee to Anniston, by motor vehicle, by Edwin Rucks, was 650 miles and required a time of twelve hours.

*Conclusions by the Court —*

The venue of a case under title 11, United States Code, is properly laid in the Bankruptcy Court for a district in which the domicile, residence, principal place of business in the United States, or principal assets in the United States of the debtor have been located for the 180 days immediately preceding the commencement of the case, or for a longer period than such of the debtor were located in any other district.[1] If, however, a bankruptcy case is filed in the wrong district, 28 U.S.C. § 1477(a) authorizes the bankruptcy court in which the venue was wrongfully laid to transfer the case under Section 1475 of that title. Section 1475 of said title 28 provides that a bankruptcy court may transfer a bankruptcy case to a bankruptcy court for another district. Section 1477 also provides that the bankruptcy court in which venue was wrongfully laid may retain the case.[2]

Both the authority for transferring such a case to another district, under Section 1475, and the direction to the court as to whether it should retain or transfer such a case, under Section 1477, rest upon the statutory mandate stated in these sections, as follows: "... in the interest of justice and for the convenience of the parties ...."

■ The statutory direction to the court to consider "the interest of justice," requires the court to consider those factors which will promote the fairness, appropriateness, and correctness of the interlocutory proceedings and matters during the pendency of the case and the correctness of the outcome of the case in achieving the statutory goals inherent in the particular type of case before the Court. This requires the Court to evaluate the impact of the location of the forum upon pending and prospective contested matters, other types of motions, and adversary proceedings, as well as the ultimate outcome of the case itself.

■ The statutory direction for the Court to consider "the convenience of the parties," appears somewhat more obvious. The Court must consider the distance to the place of holding court from the respective places of residence and business of the parties in interest (debtors and creditors) and their employees and associates, as well as legal counsel of record. This factor includes travel time and expense of travel, as well as the relative convenience or inconvenience of available modes of travel. A related factor is the extent to which the location of the forum will contribute to the interference by the court hearings and proceedings with the business and financial affairs of the parties in interest and with their personal or private affairs. It is not thought by the Court that the statutory direction requires consideration of the convenience of the attorneys involved in the case, as such, because the reference is to "the convenience of the parties"; however, the convenience of the attorneys affects the ability of the parties to maintain contact with and to obtain the services of counsel and affects the legal expense to the parties, thereby becoming a factor in "the convenience of the parties." Likewise, "the convenience of the parties" is affected by the convenience or inconvenience of the forum for the employees and associates of the parties.

■ From the provisions of the applicable statutes referred to, it can be noted, first, that the Court's decision on the motions for a change of venue in these cases

---

1. 28 U.S.C. § 1472(1).

2. It is an error to dismiss a bankruptcy case filed in the wrong district, without first considering "the interest of justice and convenience of parties." *In re Griggs,* 679 F.2d 855 (11th Cir.1982).

does not rest upon an initial determination of whether the cases were filed in the correct district, as stated in 28 U.S.C. § 1472(1), because the Court may retain a case filed in the wrong district, as permitted under the provisions of 28 U.S.C. § 1477(a). Nevertheless, from the facts found by the Court, the bankruptcy judge is of the opinion that each of the cases should have been filed in the United States Bankruptcy Court for the Southern District of Florida, in harmony with the provisions of Section 1472(1), rather than in such court for the Northern District of Alabama. No matter which of the tests is considered—"domicile, residence, principal place of business, ... or principal assets"—the facts point to the Southern District of Florida as being the proper place of venue for these cases. In this regard, the evidence is overwhelming with respect to the E & S and the Rucks Dairy cases, while there is some evidence (considered by the Court to be insufficient) which points toward the Northern District of Alabama in the Hobson and Claudie Rucks case.

It appears to the Court that the filing of a bankruptcy case in the wrong district raises a presumption that the case should be transferred to a district where the venue would be proper; otherwise, the general purpose and intent of the statute (Section 1472) defining the proper venue for a bankruptcy case is ignored. Counterbalancing this consideration is the Court's view that the transfer of a pending case to another district—once the case has passed the stage of giving notice of the initial meeting of creditors—interferes with the interest of justice and inflicts some harm on the parties, by virtue of a loss of continuity in the proceedings and inherent delays.[3]

In each of these cases, it appears to the bankruptcy judge that the geographic nexus[4] between the debtor or debtors, the creditors, the debts, the collateral for various debts, and substantial legal issues is the area of Okeechobee, Florida. The Court concludes that both the interest of justice and the convenience of the parties would best be served by transferring these cases to the Southern District of Florida, even though this will result in an interruption of the proceedings in these cases. It appears to the Court that it would be grossly inconvenient to the major creditors for this Court to retain these cases. The debtors object to the transfer of these cases and particularly object to the transfer of one or more of the supplemental matters instituted by creditors. Balancing the contention of the debtors against the inherent disadvantages of bifurcation of these cases, the Court is persuaded that the cases should be transferred intact, with the supplemental contested matters. Because the facts in this case appear to point so obviously to a transfer, the Court does not believe that it is necessary to discuss in minute detail considerations which might be appropriately dissected in a case of more balanced considerations.[5]

An Order has been entered by the Court transferring these three cases and all matters and proceedings herein to the United

---

3. See *Matter of Louis Marx & Co., Inc.,* 6 BCD 300, 2 CBC 2d 49, BLD ¶ 67973 (B.C.S.D.N.Y. 1980).

4. A word furnished by the Court's law clerk.

5. Bankruptcy Judge Clyde Pearson has detailed two sets of factors pertinent to a decision on a motion for transfer of a bankruptcy case:
   1) the probability of economical and efficient administration of the Debtor's estate.
   2) the proximity of witnesses, business books and records;
   3) the proximity of most creditors, in both number and amount; and
   4) the location of the Debtor and the Debtor's tangible and intangible assets.

1) the availability and cost of obtaining witnesses and other sources of proof, and the availability of compulsory process for witnesses;
2) the enforceability of a judgment by the court rendering the judgment;
3) whether the action is one that should be tried in a local forum;
4) the probability of a fair trial in a local forum; and
5) the forum whose law will govern the action.
*In re Neese,* 8 BCD 23, 12 B.R. 968 (B.C.W.D.Va. 1981). See also *In re Griggs,* 679 F.2d 855 (11th Cir.1982); *In re Macon Uplands Venture,* 5 BCD 1279, 2 B.R. 444, 1 CBC 2d. 385 (B.C.D.Md. 1980).

States Bankruptcy Court for the Southern District of Florida,[6] for all further administration and proceedings in the case, except as may otherwise be ordered by that Court.

---

**6.** 28 U.S.C. § 89(c), 1983 Bankruptcy Rule 1014(a)(2).